{¶ 31} For the following reasons, I respectfully dissent from the majority opinion's second assignment of error. I find that Carmella Barnes' ("Barnes") convictions are against the manifest weight of the evidence.
 {¶ 32} Initially, I concede that "the discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Thompkins, 78 Ohio St.3d 380,1997-Ohio-52. I find that such exceptional circumstances exist in this case. After reviewing the evidence produced at trial, I find that the greater amount of credible evidence weighs against Barnes' conviction.
 {¶ 33} In support of its case against Barnes, the State of Ohio ("State") presented two witnesses, Jennifer Lavender ("Lavender"), an employee of less than one month, and licensed practical nurse Melissa Andrusky. During trial, Lavender testified that Barnes had previously given her rides home from work and that Barnes had trained her for her position at Rose Mary Center. Tr. at 16, 41. Lavender also testified that on December 10, 2004, she observed Barnes give the victim, J.J. a "severe beating" with both her fists and a plastic hanger. Tr. at 32.
 {¶ 34} The State followed Lavender's testimony with Andrusky's. Andrusky testified that Lavender reported the alleged assault to her and she ordered Johnson's immediate return from workshop. Tr. at 58-59. Andrusky and fellow nurse Patricia Linville ("Linville") proceeded to give J.J. a thorough body check. Tr. at 63, 69. This body check consisted of the complete removal of J.J.'s clothing and a physical as well as visual inspection for injuries. Tr. at 63, 72. Andrusky stated that she felt J.J.'s head for bumps and noted that none were present. Andrusky stated that J.J. wore his hair in a short buzz cut and that if swelling or bumps were present, she would have felt them. Tr. at 74, 78-79. Additionally, Andrusky stated that neither she or Linville discovered any injuries to J.J.'s body, nor did J.J. indicate through motion or sound that he was in pain during the physical inspection. Tr. at 59, 63, 70. The only support for Lavender's one-sided view of the events on December 10, 2004, came from Andrusky's statement that most alleged cases of abuse do not show physical signs. Tr. at 61
 {¶ 35} In response, defense counsel presented the testimony of Alice Jackson ("Jackson"), an employee of over three months, Tr. at 82, Linville, an employee of over six years, Tr. at 101, and Barnes herself. Jackson stated that Barnes trained her, but not Lavender. Tr. at 90-91. Jackson testified that on December 10, 2004, as they were preparing to leave for workshop, J.J. pulled down a bucket of toys from a shelf in a closet. Tr. at 83. Jackson stated that she and Barnes told J.J. to pick up the toys and continued to get ready for their departure. Tr. at 85. Jackson also stated that she carried a hanger in her hand, which Barnes asked for because she was on her way into the laundry room, where the hangers were to be placed. Tr. at 85. Jackson stated that Barnes never struck J.J. and only asked for the hanger she had in her hand in order to put it away. Tr. at 86. Jackson also reported that when this alleged incident occurred, Lavender was assisting the clients with their coats in an area that made it impossible for her to see anything that occurred in front of the toy closet. Tr. at 86-87. Jackson stated that Barnes did not strike J.J. with either her fists or a hanger. Tr. at 85, 89. Finally, Jackson relayed that when she and Barnes drove the clients to workshop, J.J. was quiet and gave no indication of an assault. Tr. at 92. Linville testified next and relayed that she knew Barnes for the entire four years of her employment at Rose Mary Center. Tr. at 106, 109. Linville testified that Barnes was great with other patients, that she loved the clients she cared for, and even received permission from Rose Mary Center to take clients off of the premises for holiday visits. Tr. at 107. Linville stated that she transported J.J. back to Terrace House to do the body check and, during that time, J.J. did not display anything unusual. Tr. at 103. Linville testified that she assisted Andrusky in the body check of J.J. after Lavender reported this alleged incident. Tr. at 103. Linville stated that she did not observe or feel any marks on J.J. Tr. at 104.
 {¶ 36} Finally, Barnes testified. While on the stand, she admitted that in this line of work, clients can try her patience but that her experience taught her to deal with this frustration. Tr. at 117-118. Barnes relayed her extensive training in crisis prevention intervention and first aid, and her more than four years of work experience at Rose Mary Center. Tr. at 112-114. Additionally, Barnes refuted Lavender's claim that she had trained her. Tr. at 115. Barnes testified that Lavender worked with her on December 10, 2004, for the first time simply because another worker called in sick. Tr. at 116.
 {¶ 37} Barnes stated that on the morning of December 10, she saw J.J. pull down the bucket of toys, told him to pick them up, asked for the hanger that Jackson was holding so she could put it away, and continued preparing the clients for workshop. Tr. at 118-119. Barnes also stated that when Lavender was helping the clients with their coats, she would not have been able to see anything that may have occurred in front of the toy closet. Tr. at 120. Finally, Barnes stated that she never hit J.J. and would not do such a thing. Tr at 120. Barnes stated that she loved her job and loved the clients and that her exemplary work record showed this. Tr. at 122-123. Barnes stated that she was even given permission by Rose Mary Center to take a client home for Thanksgiving. Tr. at 123. Finally, Barnes testified that the only reason she could think of as to why Lavender accused her of hitting J.J. was because Lavender may have wanted her full-time position. Tr. at 124.
 {¶ 38} After reviewing this evidence, I can reach no conclusion other than the trier of fact lost its way in finding Barnes guilty. The State provided no physical evidence in support of this alleged assault and can only support this claim of assault with the testimony of Lavender, an employee of less than one month who was later terminated by Rose Mary Center for absenteeism. Tr. at 36. On the other hand, the defense supported its case by Jackson, and Linville, employees who knew Barnes and knew her to be an excellent worker who loved her job and the clients she cared for. Tr. at 107. Both Jackson and Barnes denied that the assault took place and Linville supported this conclusion by reporting J.J. had no marks on his body. Tr at 85, 89, 104, 120. Lavender testified that Barnes gave J.J. a "severe beating." Tr. at 32. If such a severe beating took place with both fists and a hanger, some physical indication would be present. The majority notes that at the time of the alleged assault, J.J. was wearing a t-shirt and heavy sweater and provides this as a possible reason for the lack of physical markings. However, Lavender stated that Barnes severely beat J.J. on the head with both her fist and a plastic hanger. Tr at 19, 32. Surely, J.J. clothing would not prevent any swelling, bruising or welts, which were not present during the body check, from developing on his head.
 {¶ 39} I find that the trier of fact could not reasonably conclude from the evidence presented by the State, that the State proved the offenses beyond a reasonable doubt. I further find that the State has not met its burden of persuasion and that the trial court lost its way in finding Barnes guilty. Moreover, I find that this guilty verdict created a manifest miscarriage of justice that requires reversal of the convictions and a new trial.
 {¶ 40} For the abovementioned reasons, I would sustain Barnes' second assignment of error, vacate Barnes' convictions and remand for a new trial.
 {¶ 41} Because I would find the second assignment of error dispositive, the remaining assignments of error are moot and I need not address them. App.R. 12(A).